**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
In re:

AMERIBUILD CONSTRUCTION MANAGEMENT, INC.,

                         Debtor.

Chapter 11

Case No. 08-13707 (ALG)

------------------------------------------------------------------------x

## MEMORANDUM OF OPINION AND ORDER

A P P E A R A N C E S:

DICONZA LAW, P.C.
Counsel for the Debtor
  By:   Gerard DiConza, Esq.
630 Third Avenue
New York, New York 10017

THE LAW OFFICES OF AVRUM J. ROSEN, PLLC
Counsel for Wayne Schumer
  By:   Avrum J. Rosen, Esq.
38 New Street
Huntington, New York 11743

ROSENBERG FELDMAN SMITH, LLP
Trial Counsel for Wayne Schumer
  By:   Michael Smith, Esq.
        Richard B. Feldman, Esq.
551 Fifth Avenue, 24th Floor
New York, New York 10176

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court are motions filed by a creditor, Wayne Schumer ("Schumer"), to convert the Debtor's case from Chapter 11 to Chapter 7 and to abstain in or remand a state court action brought by the Debtor against Schumer and removed by the Debtor to the District Court (and subsequently referred to this Court) after the bankruptcy filing.

For the reasons set forth below, Schumer's motion to convert is granted. The motion for abstention or remand is held in abeyance pending the appointment of a Chapter 7 trustee.

## DECISION

### The Motion to Convert

Section 1112(b)(1) of the Bankruptcy Code, as amended in 2005[1] and as applicable in this case, provides that

> . . . on request of a party in interest and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

"Cause" is defined in § 1112(b)(4), which provides that "the term 'cause' includes" sixteen acts or defaults by a debtor.[2] These examples are not exhaustive, however, and it has been established since the adoption of § 1112 that Congress used the word "includes"

---

[1] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 442(a) (2005).
[2] Section 1112(b)(4) provides:
> For purposes of this subsection, the term 'cause' includes - (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public; (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors; (E) failure to comply with an order of the court; (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor; (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any); (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court; (K) failure to pay any fees or charges required under chapter 123 of title 28; (L) revocation of an order of confirmation under section 1144; (M) inability to effectuate substantial consummation of a confirmed plan; (N) material default by the debtor with respect to a confirmed plan; (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

2

purposefully and that the grounds listed in the statute are non-exclusive.[3] The statute reflects Congress' determination that a case should not be permitted to linger in Chapter 11 when there are grounds for conversion. *See* 7 Collier on Bankruptcy, ¶ 1112.04[2] (15th ed. rev. 2005); *see also In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994).

The Court held an evidentiary hearing on December 11, 2008 on the motion to convert, at which the following evidence was adduced. The Debtor has been defunct for several years. It was apparently in business until 2007 as a construction management company. At that time it was operated on a day-to-day basis by Wayne Schumer, the movant, but wholly-owned by Brandon Roth ("Roth"). Roth and Schumer got into a dispute that became the genesis of the state court litigation, with Roth claiming that Schumer competed with the Debtor in violation of his employment agreement and Schumer claiming that Roth breached the employment agreement by failing to honor his exercise of an option to purchase stock in the Debtor.

Both Roth and Schumer blame the other for the Debtor's failure. The material fact bearing on the motion to convert, however, is not whether Roth or Schumer is responsible for the Debtor's demise, but that the Debtor's demise is an uncontested fact. It has no employees, no income, and no business, and not even a bank account. In the

---

[3] The list contained in § 1112(b) "is not exhaustive. The Court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." H. Rep. No. 95-595, 95th Cong., 1st Sess. at 405-6 (1977); *see also C-TC 9th Ave. Pshp. v. Norton Co. (In re C-TC 9th Ave. Pshp.)*, 113 F.3d 1304, 1311 (2d Cir. 1997). Commenting on the 2005 Amendments, one Court has stated,
> It is clear that Congress amended section 1112(b) to make it broader, more strict as to debtors, and more encompassing. For example, the legislative history for section 1112(b) reflects that versions of this section leading to the enactment are entitled "Expanded Grounds for Dismissal or Conversion and Appointment of the Trustee."

*In re TCR of Denver, LLC*, 338 B.R. 494, 500 (Bankr. D. Colo. 2006), citing 151 Cong. Rec. H1993 (daily ed. Apr. 14, 2005) (statement of Rep. Sensebrenner; 151 Cong. Rec. S2531 (daily ed. Mar. 11, 2005). "Going back further, it appears that committee reports from the attempts to amend the Bankruptcy Code in 1998 and 1999 expressly contemplated a non-exclusive list of "causes" to dismiss a case." *Id.* at 500 n. 18, citing H.R. Rep. No. 106-123, pt. I, at 1 (Apr. 29, 1999); H.R. Rep. No. 105-540, at 1 (May 18, 1998).

declaration filed by Roth in support of the Chapter 11 filing, he represented that the purpose of the case was "to utilize the chapter 11 process to address its litigation burden in a fair and equitable manner. The Debtor believes that it will be able to collect its receivables which in turn will lead to a distribution to its creditors under a chapter 11 plan." (Declaration of Brandon Roth, ¶ 16, Docket # 2.) In his affidavit in opposition to Schumer's motion to convert, Roth again stated that "[t]he primary objection [sic] of the Debtor's filing for chapter 11 relief was to give the Debtor the ability to collect the Receivables and provide the Debtor with a mechanism to distribute the collections pursuant to a chapter 11 plan. The Debtor's initial focus here is on collecting its Receivables." (Affidavit of Brandon Roth, ¶ 31, Docket # 24.) This does not indicate any intent to reorganize a business, which is the lifeblood of the Chapter 11 process. "When it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous." *C-TC 9th Ave. Pshp. v. Norton Co. (In re C-TC 9th Ave. Pshp.)*, 113 F.3d 1304, 1310 (2d Cir. N.Y. 1997), citing *Baker v. Latham Sparrowbush Assoc. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227 (2d Cir. 1991).

In some cases the collection of receivables may be substantially enhanced by a debtor remaining in Chapter 11 and not formally shutting its doors. In this case the Debtor shut its doors years ago, and Roth has effectively forfeited any claim that he is the proper party to collect the receivables. The receivables Roth has identified stem from transactions in 2007 at the latest. Roth has been operating a business in Florida since then and his actions for the Debtor have been sporadic, intermittent and wholly

4

unsuccessful.  Liens that support some of the receivables have been outstanding for over a year without any effort to foreclose on them.  There is nothing in the record to support the conclusion that Roth would be better able to collect receivables than a Chapter 7 trustee.  Indeed, it appears that Schumer, rather than Roth, was running the company during the period when the receivables were generated and could help in collection efforts on behalf of the Debtor.  Moreover, counsel represented that Roth would also cooperate with a trustee in the collection effort.

Roth argues that a lawyer he has used, David Frydman of Frydman LLC, is willing to sue to collect the Debtor's principal receivable on a contingency basis.  But Frydman stated at the hearing on these motions that he would be willing to represent a trustee on the same terms.  Roth claims Schumer is connected with one of the principal accounts receivable debtors and that Schumer has interfered with the Debtor's collection efforts with respect thereto.  This allegation, if true, does not weigh against appointment of a trustee; with a trustee in charge, collection could go forward without interference resulting from the obvious hostility between Schumer and Roth.

This case requires the appointment of an independent fiduciary not only to undertake the collection of receivables but also to examine the merits of the dispute between the Debtor and Schumer.  On March 22, 2007, the Debtor filed a complaint (the "Complaint") against Schumer in the Supreme Court of the State of New York, New York County, asserting claims of breach of fiduciary duty, breach of the duty of loyalty, breach of contract and conversion, and demanding an accounting (the "State Court Action").  Schumer filed an answer to the Complaint on June 18, 2007, asserting counterclaims against the Debtor for breach of his employment agreement and amounts

5

owing for services rendered.  The State Court initially entered a temporary restraining order against Schumer on March 23, 2007.  On March 29, 2007, the State Court modified the temporary restraining order to include Roth as well as a party subject to restraint.  In an opinion dated August 3, 2007, the State Court denied the Debtor's request for a preliminary injunction.  It found that Schumer had been unfairly deprived of his contractual rights and that the Debtor did not have a substantial probability of success in the lawsuit.

It is not necessary for this Court to determine the merits of the dispute between the Debtor and Schumer in making a determination on the current motions.  The suit was filed by the Debtor and, if meritorious, would result in a recovery for the estate that would presumably benefit creditors.  However, Roth's prosecution of the suit to date has not only been a failure but has demonstrated that he has no credibility as far as the State Court is concerned.  As noted above, in determining the Debtor's request for a preliminary injunction against Schumer, the State Court found that the Debtor did not have a probability of success on the merits.  Furthermore, Schumer's allegations and Roth's conduct caused the State Court to modify the temporary restraining order on March 29, 2007 to add language providing, in relevant part, that "Brandon Roth may not pay any monies to any member of his family or for any purpose outside of the normal operating costs and expenses of the business of ACM, Inc. [the Debtor]."  It appears that, notwithstanding the restraining order, Roth paid approximately $200,000 of the Debtor's funds to another company he controlled, a company which Roth claims had an oral management agreement with the Debtor.  By order dated September 25, 2008, the State Court found that this payment violated the March 29, 2007 temporary restraining order,

6

held Roth in civil contempt, and adjourned further proceedings on the contempt finding to October 31, 2008. Roth was given the opportunity to purge his contempt or to move to vacate the contempt order at a scheduled contempt hearing. On October 29, 2008, two days prior to the scheduled hearing, the Debtor removed the State Court Action to the District Court. The hearing on Roth's contempt has not yet been held.

This Court again emphasizes that in order to grant the motion to convert it need not and does not determine the merits of the dispute between Roth and Schumer. Nevertheless, it is patently obvious that the creditors would benefit from the appointment of a Chapter 7 trustee as an independent fiduciary. A fiduciary would be able to prosecute claims against Schumer, if they exist. An independent fiduciary would also be able to examine the transactions between Roth and the Debtor. For example, Roth testified at the hearing on these motions that he acted in good faith when he transferred funds to a company he controlled notwithstanding the restraining order imposed by the State Court, because of the existence of an oral management agreement between the Debtor and the company. His testimony was wholly unsupported and bordered on the incredible.[4] However, if such a management agreement existed, Roth would have a conflict representing both this Debtor and his other wholly-owned company with which the Debtor allegedly did business. In any event, there is no possibility that it would benefit creditors or the estate to permit Roth to retain control over this Debtor or the State Court Action.[5]

---

[4] The schedules filed by the Debtor in this Court do not disclose any such management agreement.
[5] Roth argues that he has funded the legal fees for counsel for the Chapter 11 debtor to date, and that the Chapter 7 trustee would have no immediate access to funds. However, according to Roth, the purpose of this proceeding is to collect receivables and Roth's position is that they are collectable.

7

**Motion to Abstain or Remand**

Schumer has also moved for abstention or remand of the State Court Action. The Court has authority to remand a removed action or proceeding under 28 U.S.C. § 1452(b) for "any equitable reason". The factors considered in determining whether to remand under § 1452(b) include:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*Drexel Burnham Lambert Group, Inc. v. Vigilant Insurance Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991). Additionally, under 28 U.S.C. § 1334(c)(1), a bankruptcy court has discretion to abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law . . . ." The issue of abstention can be raised even where a state action has been removed. *See Mt. McKinley Ins. Co. v. Corning, Inc.*, 399 F.3d 436, 446-47 (2d Cir. 2005) (mandatory abstention under § 1334(c)(2)).

There is no question that grounds exist for abstention or for a remand of the State Court Action. There has been no credible answer to the claim that the bankruptcy was filed in order to impede or delay the State Court Action. For example, the bankruptcy filing took place on September 25, 2008, the same day that contempt proceedings against Roth were initially scheduled before the State Court, and removal of the State Court Action took place only two days prior to a hearing on sanctions with respect to the finding of contempt against Roth.[6] There are strong reasons to remand or to abstain

---

[6] The State Court had scheduled a contempt hearing against Roth for September 25, 2008, the date on which the Debtor filed for bankruptcy. Despite the filing, the contempt hearing went forward, and the State

based on the timing of the removal petition and the obvious efforts of Roth to avoid a contempt citation against himself.  *See In re Briarpatch Film Corp.*, 281 B.R. 820 (Bankr. S.D.N.Y. 2002).  Indeed, counsel for the Debtor conceded that if the case stays in Chapter 11 and Roth continues to control the Debtor, that part of the State Court Action that involves Roth's contempt would have to be remanded.

On the other hand, unlike *Briarpatch* where dismissal as a bad faith filing was the appropriate remedy on a motion to convert or dismiss, this case clearly requires conversion and the appointment of a trustee.  The State Court Action was brought by the Debtor against Schumer, who is alleged to have wronged the Debtor.  There is jurisdiction in this Court for the Debtor to pursue such a claim on its own behalf.  Thus, the appropriate course of action is to hold the motion to abstain or to remand in abeyance until a Chapter 7 trustee has had time to take a position and be heard on the matter.

## **Conclusion**

For the reasons set forth above, the motion to convert is granted and the U.S. Trustee is directed to appoint a Chapter 7 trustee.  The motion to abstain or to remand is held in abeyance pending the appointment of a trustee.  As soon as the trustee files papers with respect to said motion, the motion will be restored to the calendar.

IT IS SO ORDERED.

---

Court ruled that while the automatic stay applied to the Debtor, it did not apply to Roth individually with respect to the contempt proceedings.

9

Pg 10 of 10

Dated: New York, New York
January 14, 2009

                                          */s/ Allan L. Gropper*
                                     UNITED STATES BANKRUPTCY JUDGE